## 11362

### STATE *EX REL* CAUSEY, COUNTY TREASURER,
### v. MASON *ET AL.*

#### (120 S. E., 867)

OFFICERS—SURETY COMPANY REFUSING TO ISSUE ANOTHER BOND ON OFFICER'S SUCCEEDING HIMSELF FOR ANOTHER TERM NOT LIABLE FOR SUBSEQUENT DEFAULTS.—Where a surety company issued a bond for a County Treasurer's term commencing April, 1913, and, on the expiration of that term Treasurer succeeded himself, and filed a new oath of office, but surety company refused to issue another bond and no further premiums were paid, surety company was not liable for Treasurer's defaults occurring during subsequent terms of office, in view of Const., Art. 1, § 11, and Civil Code 1912, §§ 382, 652, 661, 662, relating to the term of office of the Treasurer and the form of his bond, notwithstanding that no subsequent bond was executed, and Section 440 providing that the term of Treasurer's office is for two years and "until his successor is appointed and qualified."

Before PEURIFOY, J., Hampton, 1922. Affirmed.

Action by the State, *ex relatione* R. E. Causey, as Treasurer of Hampton County, against W. A. Mason and National Surety Co. From a judgment against defendant, Mason for the full amount, and against the Surety Company for a reduced amount, the plaintiff appeals.

The report of Special Master H. L. O'Bannon follows:

"The Special Master, to whom by an order of this honorable Court it was referred to take the testimony and report his finding of law and fact, respectfully begs leave to report as follows:

"That he has been attended by the parties and their counsel, and has taken the testimony, which is hereto submitted as a part of this report. This testimony consists mainly of an agreed statement of facts, and the facts are substantially admitted in the agreed statement and in the arguments of counsel, and these facts I find to be as follows:

"The action is brought with the consent of the State. The plaintiff, R. E. Causey, is now the County Treasurer

and has been since December 10, 1920, succeeding the defendant, W. A. Mason, as such Treasurer.  The defendant, W. A. Mason, was first appointed Treasurer on the 15th day of December, 1910, to fill an unexpired term, his commission bearing date the 31st day of December, 1910. He executed a bond, in pursuance of the Statute, as such Treasurer for said unexpired term with the defendant, National Surety Company, as his bondsman.  He was reappointed on the 16th day of February, 1911, for a full term of two years under the Statute, and commissioned March 3, 1911.  His said codefendant likewise executing the bond as surety.  He was again appointed in February, 1913, for another term of two years under the Statute, and qualified as such on the 9th day of April, 1913, with his codefendant as his surety.  In February, 1915, he was again appointed for another term of two years from that date, and applied to his codefendant for a new bond similar to that previously executed on his behalf, but his application for a new bond was denied by his codefendant, who declined to execute any further bonds for him.  His appointment on February 9, 1915, was duly confirmed by the Senate on the some day, and a commission issued to him on the 25th day of February, 1915, which was subsequently found in the vault in the Court House in Hampton.  It is admitted that the commission book in the Secretary of State's office, under the column headed 'Commissions' appears an entry '2–25,' which, it is admitted, indicated the issuance of a commission to Mason on that date.  And the further entry in said book under the column headed 'Appointed' appears the entry '2–9,' admitted to indicate the date of his appointment as Treasurer.  He filed his oath of office and the oath against duelling on February 15, 1915, but no record exists of any bond being filed in the office of the Secretary of State, or in the Clerk's office at Hampton, or in the office of the State Treasurer, nor was such bond ever recorded in

either of said offices. And it is likewise admitted that no bond of any character was executed by Mason since the above mentioned bond jointly executed by him with his codefendant for the term commencing April, 1913. The premiums on the several bonds executed by Mason and his codefendant above mentioned, including that bearing date March 12, 1913, were paid out of the County funds, but no other premiums have ever been paid to or demanded by the National Surety Company since that time. And it is also admitted that all premiums on said bonds are payable out of the County funds. A default was had by Mason in his office and the amount of the deficit, according to the public accountant, amounted to the sum of $17,865.43, and I find this to be the amount of said deficit; which defaults occurred since the expiration of Mason's term of office under the last mentioned bond, except the sum of $900.00 which the defendant, Surety Company, admits to have arisen during the currency of the said mentioned bond, and for which sum the company admits liability. The remainder of said deficit occurred after the commencement of the 1915 term, and principally during the years 1919 and 1920. In March, 1916, the General Assembly enlarged the term of office of the County Treasurer of Hampton County from two years to four years (Statutes of 1916, p. 754), which appears to have been done during the term to which Mason had been appointed in 1915.

## "LEGAL CONCLUSIONS

"Upon the finding of the foregoing facts the issue arises between the plaintiff and the defendants as a matter of law as to what extent, if any, the Surety Company herein is liable for the delicts of its codefendant Treasurer, and whether such responsibility is restricted to the delicts occurring prior to 1915, and whether the bond executed by Mason with his codefendant is liable for the subsequent delicts occurring after the expiration of the said term, and

occurring during the succeeding terms for which no new bond had ever been executed. In other words, is the Surety Company to be held responsible for the shortage created and existing from the commencement of Mason's new term in 1915 and continuing until the appointment of the plaintiff, Causey, to succeed him? The plaintiff's contend that, under the language of the bond, the contract between the State and Surety Company renders the Surety Company responsible for the conduct of the Treasurer 'during the whole period he may continue in office.' Not only for the specific term of his appointment, but for all other terms which he may fill as such Treasurer under subsequent appointments. And further that under the terms of the Statute (Section 440, Civil Code), that the term of office is for two years, 'and until his successor is appointed and qualified,' and that, under the facts in the case, there has been no subsequent qualification since the execution of the original bond aforesaid by Mason, inasmuch as he failed to execute a new bond for such subsequent term. Whilst the defendant, Surety Company, contends that the contract was limited to the term for which it was given, and which term was fixed by law, together with such reasonable time after the expiration of the ordinary qualification of his successor. That as soon as his successor was appointed that the responsibility ended under the original bond, and the fact that Mason succeeded himself made no difference, and under the facts of the case case that Mason after the expiration of the said term was a new appointee, newly commissioned, and that the Surety Company was not responsible for his having failed to execute a new bond. Each of these contentions were forcibly presented by the respective counsel engaged in the cause, and I have given earnest thought and consideration to each view and the examination of the authorities on the subject.

"There can be no question that the term of Treasurer for the County of Hampton during the currency of this bond

was fixed at two years; there could be no indeterminate term of any office in this State. Every officer has to be elected or appointed for a definite period under Section 11, Art. 1, of the Constitution. The several sections of the Statute must be construed together, and these sections germane to the issue are Sections 440, 382, 652, 661, 662 of the Civil Code, Vol. 1. Construing these statutes, therefore, together, I am of the opinion, and so conclude that the term of office of the Treasurer of Hampton County was two years at the time of the currency of the said bond; that the provision that he shall hold for an additional time until his successor has been appointed and qualified has relation entirely to the specific term of two years, and such reasonable time at the end of the term for his successor to be appointed and qualified. That the form of bond provided for in the Statute, and fixing the responsibility of the bondsman during the whole period he may continue in office, has reference to the definite term, as aforesaid, to which he had been appointed. It could certainly not be contemplated that the terms of the Statute could be enlarged by the execution of a bond for a longer period than that permitted by the Statute. And the only contract that could exist between the surety and the State in the execution of a bond as Treasurer would be for the term fixed by the Statute. There must be a new appointment at the end of each term; the taking of the oaths again and a new confirmation by the Senate, otherwise the plain intention of the Constitution and the Statute would be perverted, and a man continue in office indefinitely for many years in violation of the terms and intentions of the Constitution. This was recognized in Mason's case. He was first appointed to fill the unexpired term; he was then appointed to fill the regular term, and again appointed to fill the regular term. In each instance commissions were issued to him, bonds were executed by him, and he was confirmed by the Senate. And up to and inclusive of the 1913 appointment and to the end

of that term all of the requirements of the Statute, apparently, had been observed. He was subsequently duly appointed, filed his oaths, was commissioned, and confirmed by the Senate. It is true that some of these subsequent commissions have not been produced in Court, but the evidence is before the Court from the Secretary of State's office, and otherwise of the appointment and commission and the ratification by the Senate, and it may well be presumed that these officers performed their duty, and the commissions were issued regularly, and were misplaced by Mason, as was done in the first instance, which was found in the Clerk of Court's safe in Hampton. Counsel for the plaintiff earnestly contend, however, that the qualification of Mason depended upon his giving bond. I do not know that this is altogether true. That is a detail, and a very salutary detail, and should be a prerequisite, but the essential ingredient is the appointment that he has received to the office, upon the filing of his oaths of office, his commissions and confirmations by the Senate, all of which are done previous to his filing his bond. But, if his qualification should require the execution of a bond, and the bond has not been executed, then, who is responsible for that neglect? Certainly not the Surety Company, because the Surety Company—under the facts in this case—declined to assume any responsibility for the performance of any duties on the part of Mason after the expiration of the last term for which they had been responsible. The officials knew, or should have known, of the refusal of the bond company to issue a new bond for the term commencing in 1915. The Statute above cited cast this obligation upon the county officials of Hampton County and upon the State officials, not only to see that the bonds are executed in form and substance, but each year to go through these bonds to see if they have been impaired in any way that the funds of the County and State should be preserved from loss, as in this instance. Notwithstanding the plain statutory require-

ments, Mason has been allowed to hold his office commencing in 1915 until 1920 without a bond of any character. And it has been during this period that his largest default has occurred, with the exception of the $900.00 admittedly occurring during the currency of Mason's last bond. Can it be said that the State and County can be relieved of a shortage which has occurred through their own neglect by casting the burden upon the Surety Company in this case, who declined to be responsible, declined to execute the new bond, and threw the burden upon the State and County to see for themselves that the funds should be otherwise safeguarded? It is clear to my mind that the contractual relationship ended between these parties when the subsequent appointment was made, and when this Surety Company declined to be further responsible for the new term, and that the neglect of the officials of the County and State charged with this responsibility is the cause of the loss. Under the laws formerly existing, where the Treasurers were appointed without limitation to the tenure of office, the bonds given by them necessarily were as indeterminate as the term of office, as in the case of *State v. Baldwin,* 14 S. C., 135. But where the terms are definite and determinate, the bonds, of course, are for the term. The fact that Mason succeeded himself makes no difference as far as his succession to the office is concerned, he is as much a new man, a different individual, as was held in *Whitmire v. Langston,* 11 S. C., 381. The case of *Commissioners v. Greenwood,* 1 Dessaus, 451, is conclusive of this case. In that case the officer appointed was elected as Commissioner of the Treasury, and gave his bond for the faithful performance of his duties. After the expiration of his term of service, he was reelected, but did not give a new bond. In discussing the question whether the bond was binding, except for defaults committed during his first term of office, the Court stated the principle as follows: 'We are of the opinion that this bond can only be obligatory, for such de-

falcations as may have occurred, during Bocquet's continuance in office, under his first appointment; because his election by the Legislature was a new act. It was a new Legislature; he received a new commission; he took the oath anew; and the executive ought to have taken a new bond. So, likewise, on his second election; it was a new house of Legislature; another Governor; he had a new commission; and took the oath again. Though the same person, he was a new officer, and the Constitution required all those acts to be done each time; they ought to have been done, and we must consider them as done. If they were not, there was no blame imputable on the defendants. If the public sustains a loss, the censure must fall on those whose duty it was to have taken care of the interest of the State. The neglect of doing what ought to have been done cannot revive or give efficacy to a bond for a longer period than it was intended to be binding.' This case has been affirmed by our Court in the case of *State v. Causey,* another Hampton County case, 93 S. C., p. 304; 76 S. E., 707.

"In the case at bar, the bond given by the defendant, Surety Company, expired in the first of 1915 at the date of Mason's new qualification. There was a new commission; by a new Governor; new oaths of office; new confirmation by the Senate, and successively every two years the same course was pursued, and yet the officials, charged with the responsibility of seeing that Mason was properly bonded, from 1915 to 1920, permitted him to continue in office without annually inspecting the office to see whether he had given any bond and to ascertain its sufficiency, and all, too, when they had notice from the previous bondsman that it would not again be responsible, and to hold this bond company for the delicts of Mason, permitted through the carelessness and indifference to their duties of those charged with that responsibility, would be inequitable and unfounded in any legal contract.

"As stated by Chief Justice Gary, in the case of *State v. Mason,* wherein the present defendant was tried for the defalcation in said office of Treasurer of Hampton County, that, under the case of *State v. Bowden,* 92 S. C., 393; 75 S. E., 866, and that under the facts in the case at bar, there can be no question that Mason was duly qualified Treasurer of Hampton County at the time of the defalcation. *State v. Mason,* 118 S. C., 171; 110 S. E., 128.

"I, therefore, recommend that judgment in the sum of $17,865.43 be entered against the defendant, W. A. Mason. I further recommend that judgment be entered against the National Surety Company for the sum of $900.00.

"The objection to certain testimony reserved by plaintiff herein is overruled."

*Messrs. George Warren, Randolph Murdaugh, Solicitor,* and *Sam'l M. Wolfe, Attorney General,* for appellant, cite: *Form of bond:* 1 Civ. Code 1912, Secs. 652, 661. *Bond was effective "during the whole period (Mason) may continue in office:* 2 Bail. L., 430. *Mason was holding over under 1913 appointment, not having qualified by giving new bond:* Nott & McC., 356; 9 S. C., 262; 25 Mich., 10; 154 N. W., 931; 92 S. C., 393; 150 Ill. App., 574; 45 Cal., 12; 37 Miss., 518; 6 Nev., 163; 14 S. C., 135; 75 A. S. R., 257.

*Messrs. J. A. Mace, L. D. Lide* and *H. L. McCandlish,* for National Surety Company, cite: *Appointment and qualification of Treasurers:* 1 Civ. Code 1912, Sec. 440; 92 S. C., 393. *Bond presumed to extend only for legal term:* 29 Cyc., 1457; 15 C. J., 523; 22 R. C. L., 504, 514; 93 S. C., 300; 1 DeS., 451.

December 7, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The Court is entirely satisfied with the conclusions of the Special Master in this case confirmed by the Circuit Judge, and the judgment is accordingly affirmed.